Collins *v.* Matoaca Tribe, No. 376 of Improved
Order of Red Men of Pennsylvania, Appellant.

Argued October 2, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadt-
feld, Parker, Rhodes and Hirt, JJ.

*James S. Clifford, Jr.*, for appellant.

*Clarence K. Gundaker,* with him *Moore, Gossling and Panfil,* for appellee.

Opinion by Rhodes, J., December 18, 1939:

This is an action in assumpsit. Defendant filed an affidavit of defense to plaintiff's statement in which affidavit it averred, inter alia, that under its by-laws death benefits were not payable in the event a member was indebted to it to an amount equaling three months' dues or more at the beginning of the sickness which was the cause of death, and that deceased was indebted for dues in excess of three months at the beginning of such sickness. The case was tried by a judge without a jury. At the trial it was agreed that if plaintiff was entitled to recover, the maximum amount to which she would be entitled would be $400. The trial judge sitting without a jury found for plaintiff in that amount. Defendant's motions for judgment in its favor n. o. v. and for new trial were dismissed. Judgment was entered for plaintiff on the finding, and defendant has appealed.

Error is assigned to the dismissal of said motions, to the refusal of defendant's written point for binding instructions, and to the entry of final judgment on the finding. Deceased, who was the husband of plaintiff, had been a member of appellant beneficial association for many years. He died about 6:05 P. M. on March 25, 1935. The by-laws of appellant provided for the payment of benefits if the "member was not indebted to an amount equaling Three moons (months) dues at the beginning of his sickness or the date of accident which was the cause of death." It was admitted by counsel for plaintiff at the trial that deceased was in arrears more than three months as of noon March 25th. As of March 25th appellant owed payments of $35.10, and was delinquent in excess of eighteen months. On the morning of the twenty-fifth deceased's daughter paid $3 to the representative of appellant, and between

eleven and twelve o'clock that morning made an additional payment of $31.64, or a total of $34.64.

Dr. Raymond J. McGrath was called by plaintiff at the trial, and the adequacy of his testimony determines plaintiff's right to recover against appellant. Dr. McGrath attended deceased as early as January 26, 1935, for high blood pressure. On March 22, 1935, he was called to attend deceased who had suffered an attack of angina pectoris. He called to see him at his home again on the twenty-third, twenty-fourth, and the twenty-fifth.

It is plaintiff's contention that deceased, prior to the payment of the arrearages on the morning of March 25th, was not suffering from a sickness which was the cause of his death later that day.

We do not think that Dr. McGrath's testimony was sufficient to carry the burden of proof which rested upon plaintiff. In the certificate of death filed in the Bureau of Vital Statistics of the Pennsylvania Department of Health, Dr. McGrath, on March 26, 1935, gave the cause of deceased's death on March 25th as hypertension, having a duration of two months, and the contributory cause angina pectoris, having a duration of five days. In the proofs of death furnished to appellant, Dr. McGrath, on March 30, 1935, stated that the sickness which caused deceased's death first demonstrated itself about March 22, 1935, and that the contributory cause of death was hypertension. Aside from these written statements of Dr. McGrath, which were offered in evidence by appellant, we do not think that his oral testimony sustains plaintiff's contention. Dr. McGrath, in his oral testimony, had his attention called to the death certificate in which he had stated that deceased died of angina pectoris, and in no way repudiated what he had stated therein. At the trial on October 26, 1938, he testified without the aid of any records relating to deceased's illness and treatment. He testified that he treated deceased on March 22d, 23d, 24th, and

25th; that on the twenty-second he had suffered an attack of angina pectoris; and that on the twenty-fifth he died as a result of such an attack. He describes the attack which deceased had on the twenty-second as a pseudo attack of angina pectoris, and the fatal attack on the twenty-fifth as a real attack of angina pectoris. His testimony fails to disclose that the underlying cause which gave rise to the attacks of angina pectoris was pathologically different on the twenty-fifth from what it was on the twenty-second. It is to be noted that angina pectoris is due to spasm of arteries. It often occurs in connection with aneurism of the aorta. Individuals with arteriosclerosis are predisposed. Gout, syphilis, diabetes, and aortic insufficiency are underlying causes of the disease. It is true that there is a type of false angina occurring in hysterical persons and neurasthenics, but in fatal cases the coronary arteries are almost always found in a diseased condition.

The insufficiency of Dr. McGrath's testimony to sustain plaintiff's theory is apparent from the following extracts of his testimony, notwithstanding the accuracy or inaccuracy of such testimony from a medical standpoint: "Q. Could you therefore ever in a case of angina pectoris define what was the last illness? A. You mean a true angina attack? Q. Yes. A. Well, they might be suffering for two days and the blood vessels might expand and you could get well or you might suffer for a long while. Q. By a long while how long do you mean, years? A. Indefinitely, from one year, two years or three years. Angina attacks are something that no one can govern, it just comes and that is all there is to it ...... Q. Suppose you describe for his Honor and for us just what that spasm means? A. Well, when you have a pseudo attack it is never as severe as a real attack. In a pseudo attack you have pains and numbness in both arms and you have some pain over the heart region but a pseudo attack is never as

severe as a true angina attack. Q. Isn't it true the difference between pseudo and true angina is simply one of degree? A. Severity, difference in marked severity ...... Q. As I understand it this pseudo angina is a stoppage of a blood vessel? A. That is right. Q. Then you give a hypodermic to expand the blood vessel and the blood goes through? A. Yes. Q. Then do I also understand that if that present stoppage stays as it is the man dies, is that correct? A. In a true attack. Q. But if that is relieved and the patient lives say three or four hours and then continues to live for three days that would mean that stoppage gradually passes on? A. It moves on. Q. Am I right in saying that is the difference between a pseudo angina and a real attack of angina pectoris? A. That is right ...... A. Well, I would not say but I would say that they could get better of a pseudo attack and they do and might live a long time, but once they have a true attack they may last five minutes or may last ten minutes and it is all over."

It is obvious that deceased was ill on the twenty-second, and Dr. McGrath testified that he treated him daily from that day until his death. The fact that he did not die on the twenty-second is not controlling. Even Dr. McGrath's testimony is to the effect that there may be recurring attacks before the fatal one. When deceased was stricken with angina pectoris on March 22d his dues were more than three months in arrears. It is significant that he was confined to his home and seen daily by his physician until his death on the twenty-fifth. In our judgment the evidence establishes the fact that the beginning of his sickness, which was the cause of his death, was on March 22, 1935, or prior thereto, and furnishes no foundation upon which plaintiff's contention that the sickness which caused deceased's death commenced after the arrearages had been paid on the twenty-fifth can be supported.

Although plaintiff was not entitled to recover the

maximum as found by the trial judge, plaintiff was entitled under the evidence to a finding in her favor for $44.64. Under that by-law of appellant which provides for the payment of $10 on the death of a non-beneficial member, plaintiff was entitled to this sum. This liability was also admitted in appellant's affidavit of defense. Likewise, appellant was liable for the repayment to plaintiff of the dues in the amount of $34.64 paid on March 25, 1935, the date of deceased's death, after the beginning of his sickness which caused his death. Appellant cannot retain the dues and deny liability which could only arise as a result of such payment. The testimony establishes the fact that payment would not have been accepted if appellant had been advised of deceased's condition at the time of payment. The payment could not subject appellant to liability, and hence there was no consideration for the payment under the facts in this case.

The judgment of the court below is modified by reducing it to the sum of $44.64, with interest from March 25, 1935. See *Hoekstra v. Hopkins,* 87 Pa. Superior Ct. 15.

As so modified the judgment is affirmed.